**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION**

| | | |
|---|---|---|
| LORETTA SILVA AND ROBERT DRAGOTTI, individually, as co-trustees of The Dragotti Investment Trust, dated February 28, 2017, and as attorneys-in-fact for Carmela Dragotti, | ) ) ) ) ) | |
| | ) | CASE NO. _____ |
| Plaintiffs, | ) ) | |
| vs. | ) ) | |
| CAROL PAVLAK AND DEBORAH DRAGOTTI, | ) ) ) | |
| Defendants. | ) ) | |
| _____ | ) | |

## COMPLAINT AND DEMAND FOR JURY TRIAL

COME NOW Plaintiffs, Loretta Silva and Robert Dragotti, individually, as co-trustees of The Dragotti Investment Trust, dated February 28, 2017, and as attorneys-in-fact for Carmela Dragotti, by and through counsel, complaining of Defendants Carol Pavlak and Deborah Dragotti, and allege as follows on personal knowledge except when stated upon information and belief:

## PARTIES

1. Plaintiff Loretta Silva ("Loretta") is a citizen and resident of Burke County, North Carolina.

2. Plaintiff Robert Dragotti ("Robert") is a citizen and resident of Queens County, New York.

3. The Dragotti Investment Trust is an investment trust formed on February 28, 2017 by Joseph A. Dragotti and Carmela Dragotti. On January 2, 2018, the Trust was amended so as to be governed and administered under the laws of the State of North Carolina.

4. Upon information and belief, Joseph A. Dragotti ("Joseph") was a citizen and resident of New York at the time of his death on April 18, 2017.

5. Carmela Dragotti ("Carmela") is a citizen and resident of Catawba County, North Carolina. Carmela resides in North Carolina and holds a North Carolina Identification Card.

6. Upon information and belief, Defendant Carol Pavlak ("Carol") is a citizen and resident of Arizona.

7. Upon information and belief, Defendant Deborah Dragotti ("Deborah") is a citizen and resident of Florida.

## JURISDICTION AND VENUE

8. Jurisdiction is conferred on this Court by 28 U.S.C. §1332. The amount in controversy in this action exceeds $75,000.00, exclusive of interest and costs, and the controversy is between citizens of different States.

9. Venue is proper in this Court under 28 U.S.C. § 1391(b) because the events giving rise to this claim occurred in this judicial district and/or Defendants are subject to the court's personal jurisdiction with respect to such action.

10. This Court has personal jurisdiction over the non-resident Defendants pursuant to N.C. Gen. Stat. §§ 1-75.4(2) and 36C-2-202. The Dragotti Investment Trust has its principal place of administration in North Carolina. Defendants, as lifetime beneficiaries under The Dragotti Investment Trust, are subject to the jurisdiction of the courts of this State

regarding any matter involving the Trust. This action specifically concerns matters involving the Trust. Also, by accepting distributions from the trust after the situs and administration were transferred to North Carolina, Carol Pavlak further submitted herself to the jurisdiction of the courts of this State.

## FACTS

11.    Joseph and Carmela were married on November 7, 1964.

12.    Deborah and Carol are Joseph's biological children from a prior marriage.

13.    Loretta and Robert are Carmela's biological children from a prior marriage.

14.    After Joseph and Carmela married, Joseph adopted Loretta and Robert.

15.    On February 28, 2017, Joseph and Carmela, as Trustmakers, executed a trust agreement entitled The Dragotti Investment Trust (the "Trust"). *See, The Dragotti Investment Trust,* dated February 28, 2017, attached hereto as **Exhibit A** and incorporated herein by this reference.

16.    Joseph and Carmela named Carol Trustee of the Trust and Carol executed the Trust in that capacity on February 28, 2017.

17.    Joseph and Carmela named Carol, Robert, Loretta and Deborah as the lifetime beneficiaries of the Trust (collectively, the "Beneficiaries").

18.    Article Five, Section 5.01(a)(1) of the Trust permits the Trustee to "distribute as much of the trust property to or for the benefit of any beneficiary as our Trustee determines is necessary or advisable for the beneficiary's health, education and maintenance."

19.    On February 28, 2017, Carmela executed a General Durable Power of Attorney of Carmela Dragotti appointing Carol as her attorney-in-fact (AIF) (the "Durable Power of

238143.1

Attorney"). *See, Durable Power of Attorney,* dated February 28, 2017, attached hereto as **Exhibit B** and incorporated herein by this reference.

20. Upon information and belief, Joseph had severe and substantial health problems, including recurring colon cancer, when the Trust and Durable Power of Attorney were executed.

21. Upon information and belief, Carmela, while reluctant, executed the Trust naming Carol Trustee and the Durable Power of Attorney naming Carol her AIF because she felt that's what Joseph wanted at the time.

22. Carmela retained the right to revoke the Durable Power of Attorney. Article Two, Section 2.03 of the Durable Power of Attorney provides, "This Durable Power of Attorney shall expire … [u]pon my revocation…."

23. Carmela also retained the right to remove Carol as Trustee of the Trust in the event of Joseph's death.  Article Three, Section 3.02(b) of the Trust provides, "After the death of one of us, the survivor may remove any Trustee, with or without cause, provided the survivor appoints an individual or corporate successor Trustee that simultaneously commences services as Trustee."

24. Upon information and belief, the Trust and Durable Power of Attorney were executed in the presence and under the supervision of Carol.

25. Upon information and belief, the Trust and Durable Power of Attorney were executed without the knowledge of Loretta, Robert and/or Deborah.

26. Upon execution of the Trust, Joseph and Carmela transferred certain real and personal property to the Trust (the "Trust Assets"), including the following:

    a. Twenty-six (26) Series EE U.S. Savings Bonds (the "Bonds");

4

b. Real property located at 40 Coventry Avenue, Albertson, New York 11507 (the "NY Property"); and

c. $135,218.96 in cash ("Cash Assets").

27. Joseph died on April 18, 2017, eighteen (18) days after executing the Trust.

28. Around the time of Joseph's funeral, Carol, seemingly by mistake, mentioned the Trust in front of Robert. Thereafter, Loretta and Robert requested a copy of the Trust so that they could see what their parents had signed, to which Carol refused. Ultimately, Loretta and Robert were forced to track down and request a copy of the Trust directly from Jonathan R. Muntz, the drafting attorney.

29. Shortly after Joseph's passing, Carmela moved to North Carolina to be closer to her daughter, Loretta.

30. On December 7, 2017, pursuant to Article Three, Section 3.02(b) of the Trust, Carmela executed a Removal of Trustee removing Carol as Trustee under the Trust and simultaneously appointing Loretta as the Successor Trustee. Loretta executed an Acceptance of Appointment as Successor Trustee on December 7, 2017. *See, Removal of Trustee and Acceptance of Appointment*, attached hereto as **Exhibit C** and incorporated herein by this reference.

31. Thereafter, Loretta, as Successor Trustee, executed an Appointment of Co-Trustee appointing Robert to serve with her as Co-Successor Trustee under the Trust. Robert then executed an Acceptance of Appointment as Co-Successor Trustee on December 7, 2017. *See, Appointment of Co-Successor Trustee*, attached hereto as **Exhibit D** and incorporated herein by this reference.

32.     On December 7, 2017, Carmela executed a Revocation of Power of Attorney revoking the Durable Power of Attorney. *See, Revocation of Power of Attorney*, attached hereto as **Exhibit E** and incorporated herein by this reference.

33.     Carmela then executed a new Power of Attorney ("Power of Attorney") appointing Loretta and Robert, acting either jointly or severally, as her AIF. *See, Power of Attorney*, attached hereto as **Exhibit F** and incorporated herein by this reference.

34.     On several occasions prior to executing the Removal of Trustee, Revocation of Power of Attorney and Power of Attorney, Carmela met with her estate planning attorney, Susannah Brown, to discuss her wishes. During these meetings, Ms. Brown had an opportunity to question and observe Carmela without any interference from Loretta or Robert. The Removal of Trustee, Revocation of Power of Attorney and Power of Attorney were all prepared by Ms. Brown in accordance with Carmela's wishes. According to Ms. Brown, on December 7, 2017, when Carmela executed the Removal of Trustee removing Carol as Trustee of the Trust and, thereafter, appointed Loretta as Successor Trustee of the Trust, and when Carmela executed the Revocation of Power of Attorney removing Carol as her AIF and, thereafter, appointed Loretta and Robert her AIF, Carmela was of sound mind and was under no constraint or undue influence. *See, Affidavit of Attorney Susannah L. Brown*, dated April 26, 2018, attached hereto as **Exhibit G** and incorporated herein by this reference.

35.     On December 8, 2017, Ms. Brown mailed a copy of the Revocation of Power of Attorney, Removal of Trustee and Acceptance of Appointment of Successor Trustee to Carol via Certified Mail Return Receipt Requested pursuant to Section 3.03 of the Trust.

*See, Letter from Susannah L. Brown*, dated December 8, 2017, attached hereto as **Exhibit H** and incorporated herein by this reference.

36.     Carol refused delivery of the December 8, 2017 Certified Mail, but was on constructive notice of her removal as Trustee under the Trust and AIF under the Durable Power of Attorney. *See, Proof of Delivery,* dated January 9, 2018, attached hereto as **Exhibit I** and incorporated herein by this reference.

37.     On December 16, 2017, Thomas J. Murphy, representing himself as Carol's attorney, sent Loretta and Robert an email indicating Carol's intent to contest any attempt by Carmela to "change the trustee." *See, Email from Thomas J. Murphy,* dated December 16, 2017, attached hereto as **Exhibit J** and incorporated herein by this reference.

38.     Article Twelve, Section 12.04 of the Trust provides that the "Trustee may, at any time, change the governing law of the trust, remove all or any part of the property or the situs of administration of the trust from one jurisdiction to another, or both."

39.     Since Carmela, the sole surviving Trustmaker, had moved to and was now a resident of North Carolina, and since Loretta, one of the Co-Succesor Trustees, was also a resident of North Carolina, Loretta and Robert, as Co-Successor Trustees, agreed to change the governing laws and situs of administration of the Trust from Arizona to North Carolina.

40.     On December 18, 2017, Carmela fell and suffered an acute/subacute left femoral neck fracture. Thereafter, she was admitted to Catawba Valley Medical Center for treatment.

41.     On or about January 2, 2018, Loretta and Robert, as Co-Successor Trustees of the Trust, executed a First Amendment to the Dragotti Investment Trust Dated February 28, 2017, pursuant to Article Twelve, Section 12.04 of the Trust such that the Trust would thereafter be governed by and administered under the laws of the State of North Carolina

(the "Amendment"). The Amendment was filed with the trust records. *See, First Amendment to the Dragotti Investment Trust,* dated January 2, 2018, attached hereto as **Exhibit K** and incorporated herein by this reference.

42. On January 3, 2018, the undersigned, on behalf of Loretta and Robert in their capacities as Co-Successor Trustees of the Trust, delivered a copy of the Amendment to all Beneficiaries pursuant to Section 1.04 of the Trust. *See, Letters from Timothy Swanson,* dated January 3 and 15, 2018, attached hereto as **Exhibit L** and incorporated herein by this reference.

43. The January 3, 2018 letter was received by Deborah and Mr. Murphy, on behalf of Carol, on January 8 and January 11, respectively. *See, Certified Mail Return Receipt*, attached hereto as **Exhibit M** and incorporated herein by this reference.

44. On or about January 11, 2018, Loretta and Robert discovered that Carol withdrew the Cash Assets from the Trust's bank account on December 15, 2017, after Carmela removed her from serving as Trustee of the Trust and after Carol knew or should have known of Carmela's decision. *See, New York Community Bank Check No. 0000048751*, attached hereto as **Exhibit N** and incorporated herein by this reference.

45. Loretta and Robert also discovered that on January 5, 2018, Carol withdrew $14,300.00 from a personal checking account and $400.00 from a personal savings account held jointly by Carmela, Loretta and Robert. *See, Wells Fargo Withdrawal Slips*, attached hereto as **Exhibit O** and incorporated herein by this reference. These withdraws were made by Carol after Carmela had revoked her powers under the Durable Power of Attorney and after Carol knew or should have known of Carmela's decision.

238143.1

46. Upon information and belief, Carol added her name to Carmela's personal accounts as AIF on September 9, 2017, and specifically requested that her name not appear on any bank statements delivered to Carmela, Loretta and/or Robert. *See, Wells Fargo Letter*, attached hereto as **Exhibit P** and incorporated herein by this reference.

47. Upon information and belief, Carol planned to secretly monitor Carmela's personal bank accounts so that if she was ever challenged as Trustee of the Trust or Carmela's AIF she could immediately take control of all of Carmela's personal assets and the Trust Assets to make Carmela and all of the Beneficiaries dependent on her.

48. Upon information and belief, on January 5 and 11, 2018, within weeks of Carol learning that her powers as Trustee of the Trust and AIF for Carmela had been revoked, Carol unlawfully took possession of all of the Trust Assets and unlawfully withdrew almost the entire account balances in Carmela's personal bank accounts (which were held jointly with Loretta and Robert), leaving $11.15 in Carmela's personal checking account and $17.02 in her personal savings account.

49. Carol's unlawful possession of the Trust Assets was intended to be and was to the exclusions of the Trust and Loretta and Robert, in their capacities as Co-Successor Trustees of the Trust.

50. Carol's unlawful possession of Carmela, Loretta and Robert's personal assets was intended to be and was to the exclusions of Carmela, Loretta and Robert.

51. Carol signed the withdrawal slips on both of Carmela's personal accounts in her individual capacity and not as AIF for Carmela.

52. On January 15, 2018, the undersigned sent a letter to Carol's attorney delivering a second notice of the Revocation of Power of Attorney, Removal of Trustee and Acceptance of

238143.1

Appointment of Successor Trustee to Carol and demanding that Carol transfer the Trust Assets to Loretta and Robert, as Co-Successor Trustees of the Trust, and return the money removed from Carmela, Loretta and Robert's personal bank accounts.

53. Loretta was caring for her mother and both she and Robert agreed, in their capacities as Co-Successor Trustees, that funds should be distributed from the Trust to defray the costs of caring for Carmela as permitted under Article Five, Section 5.01(a)(1) and/or 6.01(a)(1) of the Trust.

54. Upon information and belief, on or about January 9, 2018, Carol faxed a copy of the revoked Durable Power of Attorney to Catawba Valley Medical Center and, under false pretenses, requested and received all of Carmela's medical records.

55. On January 22, 2018, Carol's attorney responded to the January 3 and 15, 2018 letters. Specifically, Carol's attorney stated, in pertinent part, as follows:

> Carol is still considering whether the recent trust amendment and power of attorney are valid. Carol needs to be provided with medical documents and other information regarding Carmela's capacity to execute the amendment and POA and to do so knowingly and free of undue influence. But Carol is well aware that Carmela becomes easily confused and disoriented, especially when she is heavily medicated. Has a neuropsychological evaluation or similar test been attempted or completed by Carmela? What measures were undertaken when the trust amendment and POA were signed by Carmela to determine that Carmela was of capacity, understood the nature and effect of the documents she was signing and that she was free of undue influence? Until this information is provided, Carol takes no position as to the validity of these documents. *Carol hereby requests copies of all such medical and mental health records for Carmela.*
>
> …
>
> *Carol also does not see the need* for a change in trustees since all of Carmela's needs were being met by the arrangements in place by Carol and Loretta.
>
> …

> Carol is under no illusions as to where this matter is headed. Loretta and Robert as trustees will empty the trust for their benefit, as they are arguably permitted to do under Section 5.01(a)(2) of the trust agreement.
>
> …
>
> *Carol has undertaken protective measures to preserve the trust's assets* that will continue until this matter is resolved or until Carol has decided upon a course of action.

(emphasis added).

56. Upon information and belief, realizing that Carmela's medical records did not substantiate any claim for lack of capacity or mental infirmity, Carol failed to turn the medical records she received from Catawba Valley Medical Center over to her own attorney, resulting in the January 22, 2018 medical records inquiry from Mr. Murphy.

57. On January 29, 2018, Loretta and Robert discovered that Carol, holding herself out as Trustee of the Trust, redeemed the Bonds on December 26, 2017, prior to the date of their maturity. *See, Conversion List*, attached hereto as **Exhibit Q** and incorporated herein by this reference. This redemption occurred after Carmela removed Carol from serving as Trustee of the Trust and after Carol knew or should have known of Carmela's decision.

58. Upon information and belief, Carol's actions of redeeming the Bonds prior to maturity cost the Trust $96,245.76 in lost principal and created a potential 2017 tax liability for the Trust of approximately $104,066.00.

59. Because Carol is holding all of the Trust Assets hostage, Loretta and Robert, as Co-Successor Trustees, have no way to pay or settle this tax liability on behalf of the Trust.

60. On February 5, 2018, the undersigned responded to Carol's attorney's email and produced Carmela's medical records which confirmed that she had a "high level of decision making" as of January 4, 2018, well after the date she removed Carol and

11

238143.1

appointed Loretta as Trustee. *See, Letter from Timothy Swanson*, dated February 5, 2018, attached hereto as **Exhibit R** and incorporated herein by this reference. Carmela's medical records also established that her medications had not changed between February and December 2017 (February being the month she executed the Trust and Durable Power of Attorney and December being the month she executed the Removal of Trustee and Revocation of Durable Power of Attorney).

61.     In the February 5, 2018 letter, the undersigned, on behalf of Loretta and Robert in their capacities as Co-Successor Trustees of the Trust, also disclosed a Contract of Sale between Loretta and Robert, as Co-Successor Trustees of the Trust, and Roger Robinson ("Contract of Sale"). Pursuant to the Contract of Sale, and subject to Carol and Deborah's option to purchase the NY Property under Article Seven, Section 7.01 of the Trust, the Trust agreed to sell and Mr. Robinson agreed to purchase the NY Property for $592,000.

62.     Loretta and Robert entered into the Contract of Sale in their capacities as Co-Successor Trustees of the Trust under Article Eleven, Section 11.16 of the Trust, which provides, "Our Trustee may sell at public or private sale … real property in such manner and on such terms and conditions as our Trustee deems appropriate."

63.     Even though Carol had executed a listing agreement with the real estate agent to market the NY Property for sale prior to being removed as Trustee, Loretta and Robert, as Co-Successor Trustees, wanted to confirm that Carol did not intend to exercise her right of first refusal under Article Seven, Section 7.01 of the Trust.

64.     On February 8, 2018, Carol's attorney confirmed that Carol did not intend to exercise her right of first refusal to purchase the NY Property. However, Carol's attorney also stated, "Please note that this is not to be construed as any form of an agreement or concession

that Loretta or Bob have authority to sell the home….” *See, Email from Thomas Murphy*, dated February 8, 2018, attached hereto as **Exhibit S** and incorporated herein by this reference.

65. On February 8, 2018, Loretta and Robert sent Deborah a letter disclosing the Contract of Sale on the NY Property and giving her an opportunity to exercise her right of refusal under Article Seven, Section 7.01 of the Trust. *See, Letter from Timothy Swanson*, dated February 8, 2018, attached hereto as **Exhibit T** and incorporated herein by this reference.

66. On February 12, 2018, the undersigned received a voicemail from Deborah stating that she did not wish to exercise her right to purchase the NY Property.

67. On February 9, 2018, the undersigned sent a letter to Carol's attorney notifying him that Carol's position on the Co-Successor Trustee's ability to sell the NY Property was going to interfere with the Contract of Sale and requesting that Carol retract her position. *See, Letter from Timothy Swanson*, dated February 9, 2018, attached hereto as **Exhibit U** and incorporated herein by this reference.

68. Thereafter, the undersigned and Carol's counsel continued to exchange correspondence, but Carol ultimately refused to retract her position so that the NY Property could close.

69. On March 24, 2018, Carol's counsel emailed the undersigned as follows:

> Please be advised that Carol Pavlak, acting in her capacity as Trustee of the Dragotti Investment Trust under agreement dated February 28, 2017 and in accordance with section 5.01(a) and, if applicable section 6.01(a), hereby provides notice she has exercised her authority to distribute Trust income and principal by taking a distribution from the Trust to herself, in her capacity as a lifetime beneficiary, in the amount of $250,000.00.

*See, Email from Thomas Murphy*, dated March 24, 2018, attached hereto as **Exhibit V** and incorporated herein by this reference.

238143.1

70.     On March 29, 2018, the undersigned, on behalf of the Co-Successor Trustees, responded to Carol's attorney's March 24, 2018 email challenging Carol's distribution to herself and also requesting that Carol execute an affidavit authorizing the sale of the NY Property to proceed.  *See, Email from Timothy Swanson*, dated March 29, 2018, attached hereto as **Exhibit W** and incorporated herein by this reference.

71.     In the March 29, 2018 correspondence, while reserving Plaintiff's position on the revocation and removal of Carol as Trustee and AIF, the undersigned requested that Carol immediately release $50,000.00 to Loretta to help her pay for Carmela's physical care, which had increased to approximately $10,000.00 per month.

72.     On April 17, 2018, the undersigned received an email from Carol's attorney stating Carol's express objection to the proposed sale of the NY Property and ignoring Loretta's request for a disbursement from the Trust.  *See, Email from Thomas Murphy*, dated April 17, 2018, attached hereto as **Exhibit X** and incorporated herein by this reference.

73.     On April 19, 2018, the undersigned received an email from Deborah objecting to the sale of the NY Property and disputing the authority of Loretta and Robert to serve as Co-Successor Trustees. *See, Email from Deborah Dragotti*, dated April 19, 2018, attached hereto as **Exhibit Y** and incorporated herein by this reference.

74.     Thereafter, the undersigned and Carol's attorney held a teleconference to discuss the dispute. During the telephone call, Carol's attorney requested that his client be permitted to speak to the listing agent for the NY Property so that she could independently determine if the purchase price was reasonable. The undersigned and his clients agreed and thereafter, the listing agent, Fatima Carlos, contacted Carol and/or her attorney to answer questions.

75. On May 2, 2018, the undersigned emailed Carol's attorney:

> I checked with our clients and the closing attorney said that we are ok on the sale as long as we have a waiver from Carol and Deborah waiving their right of first refusal and withdrawing their objections to the sale by tomorrow.

76. Thereafter, neither Carol nor her attorney responded to Plaintiff's request and the Contract of Sale was terminated.

77. Because Carol has continued to unlawfully hold the Trust Assets to the exclusion of Loretta and Robert, in their capacities as Co-Successor Trustees of the Trust, the Co-Successor Trustees have been required to borrow money as permitted under Article Eleven, Section 11.11 of the Trust to preserve and maintain the Trust Assets and fulfill the duties and obligations to the Beneficiaries. Specifically, on or about April 18, 2018, the Trust borrowed $210,000.00 so that it could continue to pay to maintain the NY Property and make distributions to defray the substantial costs the Beneficiaries continue to bear in caring for their mother, Carmela.

78. Because Carol is unlawfully holding all of the Trust assets, the Trust has and continues to incur unnecessary costs and expenses, including, but not limited to, taxes, loss of interest, loss of returns on investments, property taxes, property insurance, property maintenance cost, and loan closing costs, fees and interest.

## COUNT ONE
## DECLARATORY JUDGMENT
### *BY LORETTA AND ROBERT (AS TRUSTEES AND ATTORNEYS-IN-FACT)*
### *AGAINST ALL DEFENDANTS*

79. The previous allegations are re-alleged and incorporated herein by reference.

80. Plaintiff, as Beneficiaries and Co-Successor Trustees, have standing to bring this declaratory judgment action pursuant to 28 U.S.C. § 2201, *et seq*., the Federal Declaratory Judgment Act, and Rule 57 of the Federal Rules of Civil Procedure.

81. Loretta and Robert contend that they are the AIF for Carmela and Co-Successor Trustees of the Trust.

82. Carol contends that she is the AIF for Carmela and the Trustee of the Trust.

83. The parties to this action have legal rights and/or liabilities which are involved in this controversy and which may be determined by judgment or decree.

84. A genuine, real and actual controversy exists between the parties with respect to the above contentions.

85. This Court has jurisdiction and authority to enter a declaratory judgment in this matter.

86. Robert and Loretta are entitled to a declaration from the Court that they are the AIF for Carmela.

87. Robert and Loretta are entitled to a declaration from the Court that they are the Co-Successor Trustees of the Trust.

**COUNT TWO**
**CONVERSION OF TRUST PROPERTY**
***BY LORETTA AND ROBERT (AS TRUSTEES) AGAINST DEFENDANT CAROL PAVLAK***

88. The previous allegations are re-alleged and incorporated herein by reference.

89. By withdrawing the Cash Assets from the Trust's bank account, and by refusing to relinquish control of the Cash Assets after knowing that she had been removed as Trustee of the Trust, despite repeated demands from Plaintiffs that she relinquish control of the Cash Assets, Carol unlawfully and without authorization assumed and exercised the right

of ownership over the Cash Assets of the Trust to the exclusion of the rights of the Trust, the true owner.

90. By redeeming the Bonds prior to maturity, keeping the cash value of the Bonds, and refusing to relinquish control of the Bonds and/or the cash value of the Bonds after knowing that she had been removed as Trustee of the Trust, despite repeated demands from Plaintiffs that she relinquish control of the Bonds or cash value of the Bonds, Carol unlawfully and without authorization assumed and exercised the right of ownership over the Bonds and/or the cash value of the Bonds to the exclusion of the rights of the Trust, the true owner.

91. As a direct and proximate result of Carol's conversion of the Trust's Cash Assets and Bonds, the Trust has been damaged and is entitled to recover compensatory damages from Carol in an amount in excess of $75,000.00, plus costs and interest.

92. The actions of Carol alleged herein were intentional, willful, and wanton, and undertaken with malice and deliberate or reckless disregard for the right of the Trust within the meaning of N.C. Gen. Stat. § 1D-15.  As a result of Carol's actions, the Trust is entitled to and asks that the Court award punitive damages in an amount sufficient and appropriate to punish Carol and to deter similar future conduct.

### COUNT THREE
### TORTIOUS INTERFERENCE WITH CONTRACT
### *BY LORETTA AND ROBERT (AS TRUSTEES) AGAINST ALL DEFENDANTS*

93. The previous allegations are re-alleged and incorporated herein by reference.

94. The Trust entered into a valid Contract of Sale to sell the NY Property to a third party, Roger Robinson, for $592,000.00. The Contract of Sale conferred upon the Trust a

17

238143.1

contractual right against Mr. Robinson, namely, to purchase the NY Property for $592,000.00.

95.    Carol and Deborah were expressly notified of the Contract of Sale on February 5 and 8, respectively.

96.    On April 17, 2018, Carol objected to the sale of the NY Property.

97.    On April 19, 2018, Deborah objected to the sale of the NY Property.

98.    Both Carol and Deborah knew that their objections would stop the sale of the NY Property and objected to induce Mr. Robinson not to perform under the Contract of Sale. In fact, upon information and belief, Carol's attorney contacted Mr. Robinson's closing attorney and informed him that his client disputed Loretta and Robert's authority to act as Co-Successor Trustees under the Trust and that Carol would not consent to allow the closing on the NY Property to proceed.

99.    On April 26, 2018, Loretta and Robert were notified that the title insurance company had declined to insure the closing transaction. Shortly thereafter, Loretta and Robert were notified that Mr. Roger's had elected not to purchase the NY Property and was terminating the Contract of Sale.

100.    Carol and Deborah acted without justification, as they had no information to legitimately challenge Carmela's decision to remove Carol as Trustee and appoint Loretta and Robert as Co-Successor Trustees. Accordingly, they had no justification to challenge Loretta and Robert's decision, as Co-Successor Trustees, to enter into the Contract of Sale to sell the NY Property and/or consummate that transaction on behalf of the Trust.

238143.1

101. As a direct and proximate result of Carol's tortious interference with the Contract of Sale on the NY Property, the Trust has been damaged and is entitled to recover compensatory damages from Carol in an amount in excess of $75,000.00, plus costs and interest.

102. The actions of Carol and Deborah alleged herein were intentional, willful, and wanton, and undertaken with malice and deliberate or reckless disregard for the right of the Trust within the meaning of N.C. Gen. Stat. § 1D-15. As a result of Carol and Deborah's actions, the Trust is entitled to and asks that the Court award punitive damages in an amount sufficient and appropriate to punish Carol and Deborah and to deter similar future conduct.

### COUNT FOUR
### CLAIM AND DELIVERY
***BY LORETTA AND ROBERT (AS TRUSTEES) AGAINST DEFENDANT CAROL PAVLAK***

103. The previous allegations are re-alleged and incorporated herein by reference.

104. The Trust is the owner of the $135,218.96 in Cash Assets and $270,141.60 in prematurely redeemed Bonds. Loretta and Robert, in their capacities as Co-Successor Trustees of the Trust, are lawfully entitled to immediate possession of these Trust Assets.

105. These Trust Assets are being wrongfully detained by Carol.

106. The alleged cause of Carol's detention of these Trust Assets, to the best of Plaintiffs' knowledge, information and belief, is Carol's unlawful and unreasonable refusal to accept Carmela's decision to remove her as Trustee of the Trust.

107. These Trust Assets have not been taken for tax, assessment or fine, pursuant to a statute; or seized under an execution or attachment against the property.

108. Upon information and belief, the actual value of these Trust Assets is $405,360.56.

238143.1

109.	Pursuant to Rule 64 of the Federal Rules of Civil Procedure and N.C. Gen. Stat. § 1-472 *et seq.*, Loretta and Robert, in their capacities as Co-Successor Trustees of the Trust, are entitled to an Order requiring that law enforcement of the county where the above described property is located seize said property and deliver it to them on behalf of the Trust.

**COUNT FIVE**
**UNFAIR AND DECEPTIVE TRADE PRACTICES**
***BY LORETTA AND ROBERT (AS TRUSTEES) AGAINST ALL DEFENDANTS***

110.	The previous allegations are re-alleged and incorporated herein by reference.

111.	At all times relevant to the facts and circumstances giving rise to this action, Carol and Deborah were engaged in activities affecting commerce. The actions of Carol and Deborah as alleged herein were acts affecting commerce within the meaning of Chapter 75 of the North Carolina General Statutes.

112.	The actions of Carol and Deborah as alleged herein, constitute unfair and deceptive acts or practices in violation of N.C. Gen. Stat. § 75-1.1. Carol and Deborah's unfair and deceptive acts include, but are not limited to, converting the Trust Assets, misrepresenting the powers of Loretta and Robert as Co-Successor Trustees of the Trust so as to interfere with the sale of the NY Property, and other willful, wanton, reckless, intentional, unlawful, oppressive, unscrupulous, and wrongful acts as described in this Complaint.

113.	The actions of Carol and Deborah constitute unfair and deceptive trade practices in or affecting commerce as defined by N.C. Gen. Stat. § 75-1.1.

238143.1

114. As a direct and proximate result of Carol and Deborah's unfair and deceptive trade practices, the Trust has been damaged, and continues to suffer additional damages, in an amount in excess of $75,000.00, with the exact amount to be proven at trial.

115. Pursuant to N.C. Gen. Stat. § 75-16, the Trust is entitled to treble compensatory damages.

116. Pursuant to N.C. Gen. Stat. § 75-16.1, the Trust is entitled to an award of reasonable attorneys' fees.

## COUNT SIX
## CONVERSION OF PERSONAL PROPERTY
### *BY LORETTA AND ROBERT (INDIVIDUALLY AND AS ATTORNEYS-IN-FACT)*
### *AGAINST DEFENDANT CAROL PAVLAK*

117. The previous allegations are re-alleged and incorporated herein by reference.

118. By withdrawing money from the personal checking and savings accounts of Carmela, Loretta and Robert, and by refusing to relinquish control of said property after knowing that the withdraw occurred after Carmela had revoked her powers as AIF under the Durable Power of Attorney, despite repeated demands from Plaintiffs that she relinquish control of the personal cash assets, Carol unlawfully and without authorization assumed and exercised the right of ownership over the property of Carmela, Loretta and Robert, individually, to the exclusion of Carmela, Loretta and Robert, the true owners.

119. As a direct and proximate result of Carol's conversion of Carmela, Loretta and Robert's property, Carmela, Loretta and Robert have been damaged and are entitled to recover compensatory damages from Carol in an amount to be proven at trial, plus costs and interest.

120. The actions of Carol alleged herein were intentional, willful, and wanton, and undertaken with malice and deliberate or reckless disregard for the right of Carmela, Loretta and Robert within the meaning of N.C. Gen. Stat. § 1D-15.  As a result of Carol's actions,

238143.1

Carmela, Loretta and Robert are entitled to and ask that the Court award punitive damages in an amount sufficient and appropriate to punish Carol and to deter similar future conduct.

## COUNT SEVEN
## CLAIM AND DELIVERY
### *BY LORETTA AND ROBERT (INDIVIDUALLY AND AS ATTORNEYS-IN-FACT)*
### *AGAINST DEFENDANT CAROL PAVLAK*

121. The previous allegations are re-alleged and incorporated herein by reference.

122. Carmela, Loretta and Robert are the owner of the $14,700.00 withdrawn from their joint checking and savings accounts and are lawfully entitled to immediate possession of said property.

123. This personal property is being wrongfully detained by Carol.

124. The alleged cause of Carol's detention of this personal property, to the best of Plaintiffs' knowledge, information and belief, is Carol's unlawful and unreasonable refusal to accept Carmela's decision to revoke the Durable Power of Attorney and her powers as Carmela's AIF.

125. This personal property has not been taken for tax, assessment or fine, pursuant to a statute; or seized under an execution or attachment against the property.

126. Upon information and belief, the actual value of this property is $14,700.00.

127. Pursuant to Rule 64 of the Federal Rules of Civil Procedure and N.C. Gen. Stat. § 1-472 *et seq.*, Loretta and Robert, individually and as AIF for Carmela, are entitled to an Order requiring that law enforcement of the county where the above described property is located seize the above described personal property and deliver it to them.

## COUNT EIGHT
## UNFAIR AND DECEPTIVE TRADE PRACTICES
### *BY LORETTA AND ROBERT (INDIVIDUALLY) AGAINST DEFENDANT CAROL PAVLAK*

128.    The previous allegations are re-alleged and incorporated herein by reference.

129.    At all times relevant to the facts and circumstances giving rise to this action, Carol was engaged in activities affecting commerce. The actions of Carol as alleged herein were acts affecting commerce within the meaning of Chapter 75 of the North Carolina General Statutes.

130.    The actions of Carol as alleged herein, constitute unfair and deceptive acts or practices in violation of N.C. Gen. Stat. § 75-1.1. Carol's unfair and deceptive acts include, but are not limited to, converting Carmela, Loretta and Robert's personal assets and other willful, wanton, reckless, intentional, unlawful, oppressive, unscrupulous, and wrongful acts as described in this Complaint.

131.    The actions of Carol constitute unfair and deceptive trade practices in or affecting commerce as defined by N.C. Gen. Stat. § 75-1.1.

132.    As a direct and proximate result of Carol's unfair and deceptive trade practices, Carmela, Loretta and Robert have been damaged, and continue to suffer additional damages, in an amount in excess of $75,000.00, with the exact amount to be proven at trial.

133.    Pursuant to N.C. Gen. Stat. § 75-16, Carmela, Loretta and Robert are entitled to treble compensatory damages.

134.    Pursuant to N.C. Gen. Stat. § 75-16.1, Carmela, Loretta and Robert are entitled to an award of reasonable attorneys' fees.

238143.1

## COUNT NINE
## IN THE ALTERNATIVE, BREACH OF FIDUCIARY DUTY
### *BY LORETTA AND ROBERT (INDIVIDUALLY) AGAINST DEFENDANT CAROL PAVLAK*

135.    The previous allegations are re-alleged and incorporated herein by reference.

136.    In the event Carol if declared to be Trustee under the Trust, which is expressly denied, then in that event, Carol, as Trustee, owes the Trust and the Beneficiaries fiduciary duties, including those under N.C. Gen. Stat. § 36C-8-802 or other applicable law, to administer the Trust solely in the interest of the Beneficiaries, to refrain from engaging in any sale, encumbrance or other transaction involving the investment or management of the Trust Assets entered into by the Trustee for the Trustee's own personal account or that is otherwise affected by a conflict between the Trustee's fiduciary and personal interest, to act impartially in investing, managing and distributing the Trust Assets, giving due regard to the Beneficiaries' respective interests, to administer the Trust as a prudent person would, by considering the purposes, terms, distributional requirements, and other circumstances of the Trust, and to preserve and maximize the value of the Trust Assets.

137.    In the event Carol if declared to be Trustee under the Trust, which is expressly denied, then in that event, Carol, as Trustee, breached these fiduciary duties to the Beneficiaries by engaging in the specific conduct alleged hereinabove.

138.    The acts and omissions by Carol committed in her purported capacity as Trustee of the Trust demonstrate that Carol failed to exercise the degree of care which an ordinary person in a similar position would exercise in like circumstances.

139.    The acts and omissions by Carol committed in her purported capacity as Trustee of the Trust demonstrate that Carol failed to act solely in the interest of the Beneficiaries.

238143.1

140.    In the event Carol is declared to be Trustee under the Trust, which is expressly denied, then in that event, Carol has breached her fiduciary duties owed to the Beneficiaries.

141.    The acts and omissions of Carol constitute negligent, reckless and willful waste of the Trust Assets.

142.    Carol is required to account to the Beneficiaries for all Trust Assets.

143.    As a direct and proximate result of Carol's breach of fiduciary duty, the Beneficiaries have been damaged and are entitled to recover compensatory damages from Carol in an amount in excess of $75,000.00, plus costs and interest.

144.    The actions of Carol alleged herein were intentional, willful, and wanton, and undertaken with malice and deliberate or reckless disregard for the right of the Beneficiaries within the meaning of N.C. Gen. Stat. § 1D-15. As a result of Carol's actions, the Beneficiaries are entitled to and ask that the Court award punitive damages in an amount sufficient and appropriate to punish Carol and to deter similar future conduct.

## COUNT TEN
## INJUNCTIVE RELIEF
### *BY LORETTA AND ROBERT (IN ALL CAPACITIES) AGAINST DEFENDANT CAROL PAVLAK*

145.    The previous allegations are re-alleged and incorporated herein by reference.

146.    If Robert and Loretta are the lawful Co-Successor Trustees of the Trust, Carol is not authorized to act on behalf of the Trust.

147.    If Robert and Loretta are the lawful AIF for Carmela of the Power of Attorney, Carol is not authorized to act on behalf of Carmela.

148.    As set forth above, Carol has continued to act on behalf of the Trust, as the purported Trustee, and on behalf of Carmela, as her purported AIF, despite documents reflecting that she has been removed and replaced in both capacities. There is no evidence that

Carmela lacked capacity to remove Carol as Trustee or as her AIF. Nor is there any evidence that Carmela's decisions were the result of any undue influence. These decisions were made by Carmela less than one year after she executed the original Trust agreement and original Durable Power of Attorney. Upon information and belief, Carol witnessed Carmela's execution of these documents. Presumably, Carol will attest that Carmela did not lack capacity and was not subject to undue influence when she executed the original Trust agreement and original Durable Power of Attorney. Before making the decision to remove Carol as Trustee of the Trust and revoke her Durable Power of Attorney Carmela met with Susannah Brown, an estate planning attorney in North Carolina, concerning her wishes to remove Carol as Trustee and revoke the Durable Power of Attorney. Ms. Brown has executed an Affidavit attesting that the Removal of Trustee and Revocation of Power of Attorney were prepared by her at Carmela's direction and that, to the best of her knowledge and belief, Carmela was of sound mind and under no constraint or undue influence when making these decisions. Carmela's medical records also indicate she had a high level of decision making a month after making these decisions.

149.  In addition to converting the Trust Assets and interfering with the sale of the NY House, Carol has now instructed companies and/or agencies handling the taxes, insurance and landscaping on the NY House not to communicate with Loretta and Robert, thereby interfering with Loretta and Robert's ability to care for and maintain this Trust Asset. Upon information and belief, Carol continues to improperly hold herself out as the Trustee of the Trust and as Carmela's AIF in an effort to control the Trust Assets and Carmela's personal assets.

238143.1

150. If Carol is not enjoined by Order of this Court pending resolution of the issues set forth herein, Plaintiff will suffer great and irreparable injury in that the Trust Assets may be wasted and/or distributed contrary to the intent of the Co-Successor Trustees, the NY House may be wasted and/or made subject to contracts or agreement contrary to the intent of the Co-Successor Trustees, and the Trust may incur unnecessary liabilities, including tax liability, among other things.

151. If Carol is not enjoined by Order of this Court pending resolution of the issues set forth herein, Carmela, Loretta and Robert will suffer great and irreparable injury in that their personal assets may be negotiated, transferred and/or conveyed contrary to their wishes.

152. Robert and Loretta, individually and in their capacities as Co-Successor Trustees of the Trust and AIF for Carmela, do not have an adequate remedy at law for the injuries threatened by damage, waste and impairment of their rights and property and the rights and property of the Trust and Carmela.

153. By virtue of the allegations in this verified Complaint, Robert and Loretta, individually, in their capacities as Co-Successor Trustees of the Trust, and in their capacities as AIF for Carmela, have demonstrated a likelihood of success of the merits. Balancing the equities in this action favors the issuance of an injunction maintaining the status quo pending a determination concerning who is the lawful Trustee of the Trust and AIF for Carmela.

154. Pursuant to N.C. Gen. Stat. § 1-485 and Rule 65 of the Federal Rules of Civil Procedure, Loretta and Robert, individually and in their capacities as Co-Successor Trustees of the Trust and AIF for Carmela, move this Court to issue a preliminary injunction enjoining Defendants from using, transferring, conveying, distributing or otherwise taking any

action with respect to the Trust Assets and/or personal property of Carmela pending a determination by the Court of Count One of this Complaint.

155. Pursuant to N.C. Gen. Stat. § 1-485 and Rule 65 of the Federal Rules of Civil Procedure, Loretta and Robert, individually and in their capacities as Co-Successor Trustees of the Trust and AIF for Carmela, further move this Court to issue a mandatory injunction ordering that Carol immediately make available all records concerning the Trust Assets and/or Carmela, Loretta and Robert's personal assets, provide an accounting of all such assets, including all revenues and expenses from 2017 to present, return possession, custody and control of all Trust Assets, including any profits derived therefrom, to Loretta and Robert in their capacities as Co-Successor Trustees of the Trust, and return possession, custody and control of all personal assets to Carmela, Loretta and Robert, in their individual capacities.

## PRAYER FOR RELIEF

For the foregoing reasons, Plaintiffs request that this Court enter a final judgment awarding to the Plaintiffs against the Defendants the following:

1. As more specifically set forth above, a preliminary injunction enjoining Carol from using, transferring, conveying, distributing or otherwise taking any action with respect to the Trust Assets and personal property of Carmela pending a determination by the Court of Count One of this Complaint and a mandatory injunction ordering that Carol immediately make available all records concerning the Trust Assets and/or Carmela, Loretta and Robert's personal assets, provide an accounting of all such assets, including all revenues and expenses, from 2017 to present, return possession, custody and control of all Trust Assets, including any profits derived therefrom, to Loretta and Robert in their capacities

Case 5:18-cv-00097-GCM   Document 1   Filed 06/15/18   Page 28 of 32

as Co-Successor Trustees of the Trust, and return possession, custody and control of all personal assets to Carmela, Loretta and Robert, in their individual capacities;

2.    A Declaration and/or Judgment by this Court that Loretta and Robert are the Co-Successor Trustees of the Trust;

3.    A Declaration and/or Judgment by this Court that Loretta and Robert are Carmela's lawful AIF under the Power of Attorney;

4.    An award of actual damages in an amount to be determined by the finder of fact, but in any case, in excess of $75,000.00;

5.    An award of punitive damages in an amount to be determined by the finder of fact, but in any case, in excess of $75,000.00;

6.    In the alternative, an award of treble damages pursuant to North Carolina's Unfair and Deceptive Trade Practices Act;

7.    An award of pre and post-judgment interest as allowed by applicable federal and/or state law;

8.    The costs of this case and Plaintiffs' reasonable attorneys' fees be taxed against Defendants and/or the Trust to the extent allowed under Section 10.07 of the Trust, N.C. Gen. Stat. § 75-16.1, other applicable federal and/or state law, or the Court's inherent authority;

9.    An Order directing law enforcement where the personal property of the Trust and/or Carmela, Loretta and Robert is located, to take all steps necessary to take immediate possession thereof and deliver it to Plaintiffs, either in their capacities as Co-Successor Trustees of the Trust, their individual capacities, and/or their capacities as AIF for Carmela; and

29

238143.1

10.    Any such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand trial by jury on all issues so triable.


Dated: June 15, 2018.


                                        **s/ Timothy D. Swanson**

                                        Timothy D. Swanson (Bar Number: 35598)
                                        Attorney for Plaintiffs
                                        Young, Morphis, Bach & Taylor, LLP
                                        Post Office Drawer 2428
                                        Hickory, NC 28603
                                        Telephone (828) 322-466323
                                        Fax: (828) 324-2431
                                        E-mail: timothys@hickorylaw.com

## VERIFICATION

Loretta Silva, individually, as Co-Successor Trustee of The Dragotti Investment Trust, dated February 28, 2017, and as Attorney-in-Fact for Carmela Dragotti, being first duly sworn, deposes and avers:

I am over the age of eighteen and am authorized to execute this Verification individually, as Co-Successor Trustee of The Dragotti Investment Trust, dated February 28, 2017, and as Attorney-in-Fact for Carmela Dragotti, the named Plaintiff in this action. I have read the foregoing Complaint and know the contents thereof. The factual matters stated herein are true and correct to the best of my knowledge and belief.

_Loretta Silva_
Loretta Silva, individually, as Co-Successor Trustee of The Dragotti Investment Trust, dated February 28, 2017, and as Attorney-in-Fact for Carmela Dragotti

STATE OF NORTH CAROLINA
CATAWBA COUNTY

I, _Kayla M. Wallace_, a Notary Public of said County and State, do hereby certify that Loretta Silva, individually, as Co-Successor Trustee of The Dragotti Investment Trust, dated February 28, 2017, and as Attorney-in-Fact for Carmela Dragotti, personally came before me this day and, being authorized to do so, executed the foregoing document on behalf of herself, The Dragotti Investment Trust, and Carmela Dragotti.

Date: _6/12/2018_

_Kayla M. Wallace_
(Official Signature of Notary)
_Kayla M. Wallace_, Notary Public
(Notary's printed or typed name)

My commission expires: _4/26/2021_

(Official Seal)

KAYLA M. WALLACE
NOTARY
PUBLIC
CATAWBA COUNTY, NC

## VERIFICATION

Robert Dragotti, individually, as Co-Successor Trustee of The Dragotti Investment Trust, dated February 28, 2017, and as Attorney-in-Fact for Carmela Dragotti, being first duly sworn, deposes and avers:

I am over the age of eighteen and am authorized to execute this Verification individually, as Co-Successor Trustee of The Dragotti Investment Trust, dated February 28, 2017, and as Attorney-in-Fact for Carmela Dragotti, the named Plaintiff in this action. I have read the foregoing Complaint and know the contents thereof. The factual matters stated herein are true and correct to the best of my knowledge and belief.

> _____
> Robert Dragotti, individually, as Co-Successor Trustee of The Dragotti Investment Trust, dated February 28, 2017, and as Attorney-in-Fact for Carmela Dragotti

STATE OF NEW YORK
~~QUEENS~~ COUNTY
Nassau ©

I, _Claudine Randazzo_, a Notary Public of said County and State, do hereby certify that Robert Dragotti, individually, as Co-Successor Trustee of The Dragotti Investment Trust, dated February 28, 2017, and as Attorney-in-Fact for Carmela Dragotti, personally came before me this day and, being authorized to do so, executed the foregoing document on behalf of himself, The Dragotti Investment Trust, and Carmela Dragotti.

Date: 6 | 12 | 2018

_____
(Official Signature of Notary)
Claudine Randazzo Notary Public
(Notary's printed or typed name)

(Official Seal)

My commission expires: May 24, 2019

Claudine Randazzo
Notary Public, State of New York
No. 01RA6025505
Qualified in Nassau County
Commission Expires May 24, 20__19