IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:18CV97

| | | |
|---|---|---|
| LORETTA SILVA and ROBERT DRAGOTTI, individually, as co-trustees of The Dragotti Investment Trust, dated February 28, 2017, and as attorneys-in-fact for Carmela Dragotti, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | ORDER |
| CAROL PAVLAK and DEBORAH DRAGOTTI, | ) ) ) | |
| Defendants. | ) ) | |

This matter is before the Court upon the Defendants' Motion to Dismiss/Transfer Venue, in which Defendants seek to dismiss for lack of personal jurisdiction and improper venue, or in the alternative, to transfer venue to the United States District Court for the District of Arizona. Plaintiffs have responded and Defendants have filed a Reply. Accordingly, this matter is ripe for disposition.

**I. FACTUAL BACKGROUND**

This case involves a dispute over a family trust. Joseph and Carmela Dragotti were married in 1964. Each had two children from prior marriages. Carol and Deborah were Joseph's biological children and Loretta and Robert were Carmela's biological children. The Dragottis resided in New York where they maintained a house. In 2014 they moved from New York to an independent living facility in Arizona near their daughter, Defendant Carol Pavlak ("Carol"). Upon relocating, Joseph closed their New York bank accounts and moved all assets (with the exception of their New York house) to Arizona banks.

1

On February 28, 2017, the Dragottis formed the Dragotti Investment Trust (the "Trust").[1] Article One of the Trust stated that Arizona law applies. (Doc. No. 1-1). The Dragottis then transferred into the Trust their primary assets: twenty-six (26) Series EE U.S. Savings Bonds, the house located in Albertson, New York, and approximately $135, 218.96 in cash. Defendant Carol Pavlak was appointed Trustee. The Dragottis named their biological and stepchildren Carol Pavlak, Debbie Dragotti, Loretta Silva and Robert Dragotti, lifetime beneficiaries of the Trust. Plaintiffs Robert Dragotti and Loretta Silva are residents of New York and North Carolina, respectively. Deborah Dragotti and Carol Pavlak are residents of Florida and Arizona, respectively.

Joseph Dragotti died on April 18, 2017, and shortly thereafter Carmella moved to a senior living home in North Carolina. Carol then placed Trust funds in a Wells Fargo bank account from an Arizona branch for Loretta to withdraw and pay Carmela's medical and living expenses.

Article Three, Section 3.02(b) of the Trust provides, "After the death of one of us, the survivor may remove any Trustee, with or without cause, provided the survivor appoints an individual or corporate successor Trustee that simultaneously commences services as Trustee." (*Id*., § 3.02(b)). On December 7, 2017, Carmela executed a Removal of Trustee removing Carol as Trustee under the Trust and simultaneously appointing Loretta as the Successor Trustee. Loretta executed an Acceptance of Appointment as Successor Trustee on that same day. Then, as Successor Trustee, Loretta executed an Appointment of Co-Trustee appointing Robert to serve with her as Co-Successor Trustee under the Trust. Robert executed an Acceptance of Appointment as Co-Successor Trustee on that same day. On December 8, 2017, Carmella's North Carolina estate planning attorney, Susannah Brown, mailed a copy of the Removal of

---

[1] The Trust is attached as Exhibit 1 to Plaintiffs' Complaint.

Trustee and Acceptance of Appointment of Successor Trustee to Carol via Certified Mail Return Receipt Requested pursuant to Article Three, Section 3.03 of the Trust.

On December 15, 2017, Carol went to an AmTrust Bank branch in Phoenix and moved $135,218.96 in funds from the Trust accounts into her account allegedly to prevent Loretta and Robert from looting the Trust. On or around December 26, 2017, Carol also redeemed the Series EE Bonds, the proceeds of which are now in an Arizona bank account.

Article Twelve, Section 12.04 of the Trust provides that the "Trustee may, at any time change the governing law of the trust, remove all or part of the property or the situs of administration of the trust from one jurisdiction to another, or both." (Doc. No. 1-1, § 12.04). Because Carmela, the sole surviving Trustmaker, had moved to and was now a legal resident of North Carolina, and Loretta, one of the Co-Successor Trustees, was also a resident of North Carolina, Loretta and Robert, as Co-Successor Trustees, agreed to change the governing laws and situs of administration of the Trust from Arizona to North Carolina. To that end, on January 2, 2018, Loretta and Robert, as Co-Successor Trustees, executed a First Amendment to the Trust, pursuant to Article Twelve, Section 12.04, such that the Trust would thereafter be governed by and administered under the laws of the State of North Carolina. The Amendment was thereafter filed with the trust records. On January 3, 2018, Loretta and Robert delivered a copy of the Amendment to all the beneficiaries pursuant to Section 1.04 of the Trust. The notice of amendment was received by Deborah and Carol on January 8 and 11, 2018, respectively.

On January 5, 2018, Carol, acting as Carmela's power of attorney, withdrew $14,700 of Trust funds that were previously deposited in Carmela's joint Wells Fargo account. Carol still possesses the cash and has notified Plaintiffs' counsel on multiple occasions that she is willing to send funds for Carmela's care. On January 15, 2018, Loretta and Robert demanded that all trust

assets be transferred to them pursuant to Article One, Section 1.05 of the Trust. In response, Carol's attorney argued that "Carol …does not see the need for a change in trustees since all of Carmela's needs [are] being met by the arrangements in place…," and that "Carol has undertaken protective measures to preserve the trust's assets…." (Compl., ¶ 55). On March 24, 2018, Carol's attorney informed Loretta and Robert that Carol distributed $250,000.00 from the Trust to herself as a lifetime beneficiary.

In their capacity as Co-Trustees of the Trust, Plaintiffs entered into a Contract of Sale to sell the New York house, but it required the authorization of all beneficiaries. Both Carol and Deborah objected to the proposed sale via email to Plaintiffs' North Carolina counsel. As a result, the Contract of Sale was terminated.

Defendant Deborah Dragotti ("Deborah") is and has been a resident of Fort Lauderdale, Florida for approximately eight (8) years. Deborah has no contacts with North Carolina and has never traveled to North Carolina. Deborah has no claim to the Trusteeship and has received no distributions from the Trust to date.

Plaintiffs filed the present Complaint asserting claims for Declaratory Judgment, Conversion of Trust Property, Tortious Interference with Contract, Claim and Delivery, Unfair and Deceptive Trade Practices, Conversion of Personal Property, Breach of Fiduciary Duty, and Injunctive Relief. Defendants move to dismiss for lack of personal jurisdiction and improper venue, or in the alternative, to transfer venue to Arizona.

## II. DISCUSSION

### A. Personal Jurisdiction

Where, as here, the court rules on a 12(b)(2) motion relying on the Complaint, briefs, and affidavits alone, without conducting an evidentiary hearing, the burden is on the plaintiff to make

a prima facie showing that personal jurisdiction exists.[2] *Mylan Laboratories, Inc. v. Akzo, N.V.*, 2 F.3d 56, 60 (4th Cir. 1993). Moreover, all relevant pleading allegations must be construed in the light most favorable to the plaintiff. *Id.*

To meet their burden, Plaintiffs must satisfy a two-step inquiry. First, Plaintiffs must show that the North Carolina long-arm statute confers personal jurisdiction. Second, they must show that the exercise of personal jurisdiction over Defendants would not violate the requirements of the Due Process clause of the Fourteenth Amendment. *See Christian Sci. Bd. of Directors of First Church of Christ, Scientist v. Nolan*, 259 F.3d 209, 215 (4th Cir. 2001). The North Carolina Supreme Court has liberally construed the North Carolina long-arm statute to extend to the full jurisdictional powers permissible under federal Due Process. *Vishay Intertechnology, Inc. v. Delta International Corp.*, 696 F.2d 1062, 1065 (4th Cir. 1982). Thus, when personal jurisdiction is alleged to exist pursuant to the long-arm statute, the question of statutory authority collapses into one inquiry, namely, whether the defendant has the minimum contacts necessary to meet the requirements of due process. *See ESAB Grp., Inc. v. Centricut, Inc.*, 126 F.3d 617, 623 (4th Cir. 1997).

The Supreme Court has fashioned two tests for determining whether a defendant's contacts with the forum state are sufficient to confer personal jurisdiction. If the cause of action is unrelated to the defendant's activities in the forum state, plaintiff must prove that the contacts are "continuous and systematic" to support the exercise of "general jurisdiction" over the defendant. *Helicopteros Nationales de Colombia v. Hall*, 466 U.S. 408, 415-16 (1984). If the cause of action is related to or arises out of defendant's actions within the state, the plaintiff can

---

[2] In ruling on a motion to dismiss for lack of personal jurisdiction, the court may consider evidence outside of the pleadings, such as affidavits and other evidentiary materials, without converting the motion to dismiss into a motion for summary judgment. *E.g.*, *Magic Toyota, Inc. v. Southeast Toyota Distribs., Inc.*, 784 F. Supp. 306, 310 (D.S.C. 1992).

establish more limited "specific jurisdiction." In determining whether specific jurisdiction applies, the Fourth Circuit considers: (1) the extent to which the defendant has purposefully availed itself of the privilege of conducting activities in the state; (2) whether the plaintiff's claims arise out of those activities directed at the state; and (3) whether the exercise of personal jurisdiction would be constitutionally "reasonable." *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc*., 334 F.3d 390, 397 (4th Cir. 2003). In this case, the Plaintiffs are alleging that this Court has specific personal jurisdiction over Defendants.

North Carolina's long-arm statute confers jurisdiction over a person served in any action "which may be brought under statutes of this State that specifically confer grounds for personal jurisdiction." N.C. Gen. Stat. § 1-75.4(2). Such a statute exists in this case: N.C. Gen. Stat. § 36C-2-202 provides, in pertinent part, as follows:

> (b) With respect to their interests in the trust, the beneficiaries of a trust having its principal place of administration in this State are subject to the jurisdiction of the courts of this State regarding any matter involving the trust. By accepting a distribution from such a trust, the recipient submits personally to the jurisdiction of the courts of this State regarding any matter involving the trust.

N.C. Gen. Stat. § 36C-2-202(b).

Here, the Complaint alleges that the Trust is administered under the laws of North Carolina. (Compl., ¶ 41). Carol and Deborah are lifetime beneficiaries under the Trust. However, Deborah has received no distributions from the Trust. Plaintiffs allege that Deborah has only one contact with North Carolina — that she objected to the sale of the New York house via email to Plaintiff's counsel. This sole contact with North Carolina is clearly insufficient for purposes of a

due process analysis. The Court finds that personal jurisdiction over Deborah under these facts would not be constitutionally reasonable.[3]

Unlike Deborah, Carol did accept a distribution from the Trust. On March 24, 2018, Carol's attorney notified Plaintiffs' attorney that Carol had taken a $250,000.00 distribution as a lifetime beneficiary under the Trust. Carol's distribution to herself after the situs of administration of the Trust had been changed from Arizona to North Carolina establishes jurisdiction under N.C. Gen. Stat. § 36C-2-202 and North Carolina's long-arm statute with respect to Carol.

The Court must next determine whether personal jurisdiction over Carol comports with due process. Carol argues that because she did not purposefully direct her activities at the residents of this state specific jurisdiction over her is lacking. However, she admits to taking a $250,000 distribution from the North Carolina Trust. Unlike her previous withdrawals, at the time she took March distribution, Carol was well aware that the situs of the Trust had been changed from Arizona to North Carolina. Also, after Carmela revoked her original General Power of Attorney, Carol used the revoked General Power of Attorney to withdraw money from the joint bank accounts of Carmela and Loretta. These acts give rise to certain counts in the Complaint and are sufficiently purposeful in their aim to North Carolina, the alleged situs of the Trust, and support the exercise of specific jurisdiction as to Carol.

In determining whether the exercise of personal jurisdiction is constitutionally reasonable, the Court may consider "the burden on the defendant," "the forum State's interest in adjudicating the dispute," "the plaintiff's interest in obtaining convenient and effective relief,"

---

[3] For this reason the Court finds it unnecessary to address Defendants' argument that personal jurisdiction over Deborah is also conferred by N.C. Gen. Stat. § 1-75.4(6)(c) based upon her alleged "interference" with the Trust's Contract of Sale on the New York house.

"the interstate judicial system's interest in obtaining the most efficient resolution of controversies," and "the shared interest of the several States in furthering fundamental substantive social policies." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985). While "[t]hese considerations may sometimes serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required . . . where a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King*, 471 U.S. at 477 (internal citations omitted).

Our courts have long held that specific jurisdiction may be exercised over defendants where their "tortious actions" are expressly aimed at North Carolina or its residents. *See Colder v. Jones*, 465 U.S. 783 (1984). Generally, the commission of a single tortious act is sufficient. *See Waller v. Butkovich*, 584 F. Supp. 909, 927 (M.D.N.C. 1984) (citing *Columbia Briargate Co. v. First National Bank in Dallas*, 713 F.2d 1052, 1057 (4th Cir.1983)). Notably, "such defeats of otherwise constitutional personal jurisdiction 'are limited to the rare situation in which the plaintiff's interest and the state's interest in adjudicating the dispute in the forum are so attenuated that they are clearly outweighed by the burden of subjecting the defendant to litigation within the forum.'" *Akro Corp. v. Luker*, 45 F.3d 1541, 1549 (Fed. Cir.1995) (quoting *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1568 (Fed. Cir. 1994)).

Here, Carol has not presented a "compelling case" that jurisdiction would not be fair. North Carolina clearly has an interest in protecting its citizens from the tortious conduct of non-residents and assuring that its laws are not violated. Here, Plaintiffs allege that they have suffered significant harm as a result of Carol's unlawful activities. By committing intentional torts against North Carolina residents, Carol knew or should have known that she may be hauled into court in

North Carolina to defend her actions. All of these alleged intentional torts were committed against the North Carolina Plaintiff after Carol knew of Carmela's decision to place Loretta and Robert in charge of the Trust and to act on her behalf as her attorneys-in-fact. Carol's minimal and anticipated burden of having to defend herself for her actions in North Carolina do not outweigh North Carolina's interest in this case.

For the foregoing reasons, the Court's exercise of specific jurisdiction over Carol comports with the Due Process Clause and is appropriate.

### B. Venue under § 1391

Defendants move in the alternative to transfer venue to Arizona. A civil action may be brought in -

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
> (3) if there is no district in which an action may otherwise be brought s provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b). Plaintiffs assert that venue is proper pursuant to § 1391(b)(2). To survive a motion to dismiss for improper venue, Plaintiffs must make a prima facie showing of proper venue. *Mitrano v. Hawes*, 377 F.3d 402, 405 (4th Cir. 2004). Plaintiffs have alleged that the situs of the Trust has been changed to the Western District of North Carolina. Accordingly, a substantial part of property that is the subject of the action is situated in this district and venue is proper.

In addition, Carol's powers as Trustee of the Trust and as attorney-in-fact for Carmela were revoked in North Carolina and, thereafter, the Trust was amended in North Carolina. But

9

for these actions, Plaintiffs' claims would not exist. These acts form the foundation of the case and give rise to all of Plaintiffs' claims. Plaintiffs' declaratory judgment claim (Count I) seeks a declaration from the Court that the Plaintiffs are the lawful attorneys-in-fact for Carmela and Co-Successor Trustees of the Trust. Plaintiffs' conversion, tortious interference, claim and delivery and unfair and deceptive trade practices claims (Counts II, III, IV, V, VI, VII and VIII) are based entirely on Carmela's decision to revoke all of Carol's powers under the Trust and General Power of Attorney. These claims arise from Carol's attempt to exercise powers that Carmela allegedly revoked. Accordingly, a substantial part of the events giving rise to the claims occurred in North Carolina.

### C. Venue under 28 U.S.C. §1404(a)

Defendants move in the alternative to transfer venue to Arizona pursuant to 28 U.S.C. § 1404(a). Courts may transfer venue "for the convenience of parties and witnesses, in the interest of justice" when venue is proper in both the transferring district and in another district. 28 U.S.C. § 1404(a). The Fourth Circuit has established four factors for consideration in deciding motions to transfer under § 1404(a): "(1) the weight accorded to plaintiff's choice of venue; (2) witness convenience and access; (3) convenience of the parties; and (4) the interest of justice." *Trustees of the Plumbers & Pipefitters Nat. Pension Fund v. Plumbing Servs., Inc.*, 791 F.3d 436, 444 (4th Cir. 2015). In conducting the convenience and justice inquiry, the Court considers several factors to determine whether to transfer venue:

> (1) the plaintiff's initial choice of forum; (2) relative ease of access to sources of proof; (3) availability of compulsory process for attendance of unwilling witnesses, and the cost of obtaining attendance of willing and unwilling witnesses; (4) possibility of a view of the premises, if appropriate; (5) enforceability of a judgment, if one is obtained; (6) relative advantage and obstacles to a fair trial; (7) other practical problems that make a trial easy, expeditious, and inexpensive; (8) administrative difficulties of court congestion; (9) local interest in having localized controversies settled at home; (10) appropriateness in having a trial of a diversity

case in a forum that is at home with the state law that must govern the action; and (11) avoidance of unnecessary problems with conflicts of laws.

*Scholl v. Sagon RV Supercenter, LLC*, 249 F.R.D. 230, 239 (W.D.N.C. 2008).

Defendants have the burden of showing that through the application of these factors, the balance of convenience strongly favors transfer, and this burden is heavy. *See Buttar v. November*, No, 3:10cv668, 2011 WL2375492, at *4 (W.D.N.C. June 9, 2011). A motion to transfer venue should be denied where it would merely shift rather than eliminate the inconvenience. *See Pinpoint IT Servs., LLC v. Atlas IT Export Corp.*, 812 F. Supp. 2d 710, 721 (E.D. Va. 2011) (finding "a transfer of venue that merely switches the inconvenience from one party to the other generally will be refused.")

Plaintiffs' initial choice of forum is North Carolina and therefore this factor weighs heavily in favor of the case remaining in this venue. "As a general rule, a plaintiff's 'choice of venue is entitled to substantial weight in determining whether transfer is appropriate.'" *Plumbing Servs., Inc.*, 791 F.3d at 444 (quoting *Bd. of Trs. v. Sullivant Ave. Props., LLC*, 508 F.Supp.2d 473, 477 (E.D.Va. 2007)).

With regard to the ease of access to proof, it appears to the Court that many of the material witnesses are located in North Carolina. The Successor Trustee, Loretta, resides in North Carolina, as well as Carmela, the Trustmaker. Susannah Brown, the estate planning attorney who consulted with Carmela and drafted the documents revoking Carol's powers as Trustee of the Trust and attorney-in-fact under the General Power of Attorney is located in North Carolina. Finally, Carmela's health care providers, who may testify as to her competence, are located in North Carolina. While Carmela's health care providers and Carmela's attorney can be compelled to attend trial in North Carolina, they cannot be compelled to attend trial in Arizona. Because this case will likely turn on Carmela's decision and ability to execute the Removal of

Trustee and Revocation of Power of Attorney, these factors weigh heavily in favor of venue remaining in North Carolina.

The governing law with respect to the Trust was changed from Arizona to North Carolina by virtue of the First Amendment to the Trust executed by Loretta and Robert as Co- Successor Trustees on January 2, 2018. Thus, North Carolina law will apply. This factor likewise weighs in favor of venue remaining in North Carolina.

The remaining factors appear to be either inapplicable or in equipoise. Accordingly, Defendants have failed to meet their burden of showing that the balance of convenience strongly favors transfer. Accordingly, their motion to transfer venue pursuant to § 1404(a) is denied.

IT IS THEREFORE ORDERED that Defendants' Motion to Dismiss/Transfer Venue is granted in part and denied in part. The motion is denied except as to Defendant Deborah Dragotti's motion to dismiss for lack of personal jurisdiction.

Signed: October 3, 2018

Graham C. Mullen
United States District Judge